UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
SPENCER LADER and SPENDAN
SPORTS, LLC,

                                   MEMORANDUM AND ORDER

                Plaintiffs,              CV 12-3554

          -against-              (Wexler, J.)

CARLOS DELGADO,

                Defendant.
-----------------------------------------------------X
APPEARANCES:

       CARNEY & MCKAY
       BY: ROBERT B. MCKAY, ESQ.
       Attorneys for Plaintiffs
       1050 Franklin Avenue, Suite 500
       Garden City, New York 11531

       MORITT HOCK & HAMROFF LLP
       BY: MICHAEL S. RE, ESQ.
       Attorneys for Defendants
       400 Garden City Plaza
       Garden City, New York 11530

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAR 29 2013 ★
LONG ISLAND OFFICE

WEXLER, District Judge

      This is a case brought pursuant to this court's diversity jurisdiction. Plaintiffs are Spencer Lader ("" Lader"), who is a principle of Plaintiff Spendan Sports, LLC. ("Spenden") (collectively "Plaintiffs"). Defendant is Carlos Delgado ("Delgado" or "Defendant"), a former professional baseball player who played, at one time, for the New York Mets. Presently before the court is Defendant's motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the case in its entirety. For the reasons set forth below, the motion is

1

granted.

## BACKGROUND

I.  Facts

At this stage in the proceedings, the facts before the court are presumed true and construed in the light most favorable to Plaintiffs, the non-moving parties. Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).

The facts to be considered are derived from the complaint, as well as documents properly before the court of which both parties have notice. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (on motion to dismiss court may consider pleadings as well as all documents incorporated therein by reference). Such documents include those attached to the pleadings, incorporated in it by reference and/or subject to judicial notice. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); see Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006) (court considers documents if they "are integral to the pleading or subject to judicial notice"). In this matter, the court may therefore consider the pleadings here as well as those in a related state court matter.

### A.  The Parties and Their Business Arrangement

Plaintiffs are engaged in the business of representing sports figures in the marketing and sale of sports memorabilia bearing their signatures and likeness. Lader has been in the sports marketing business since 2005. He has continued in that business, as a principle of Spenden, since 2007. As noted, Delgado is a former professional baseball player. He is alleged to reside in Puerto Rico.

In 2006, Lader and Delgado entered into a sports memorabilia letter of intent. Lader and

2

Delgado thereafter entered into a sports memorabilia agreement with a newly formed corporate entity known as Authentic Memorabilia LLC ("Authentic Memorabilia") (the "Agreement"). Pursuant to the Agreement, Authentic Memorabilia assumed Lader's obligations to Delgado under any prior agreement. The Agreement provided that Delgado would receive annual payments of $325,000, in return for fulfillment of certain exclusive marketing contractual obligations, including, inter alia, signing sports memorabilia and making public appearances.

Delgado is alleged to have acted in contravention of his contractual obligations in various ways, including placing his signature on bats bearing the name of a different player. Plaintiffs' complaint also contains allegations that Delgado was somehow involved with a physician who was publicized as having injected other athletes (not Delgado) with performance enhancing drugs. A "series of news stories" is alleged to have "linked" Delgado's name with that physician.

### B. The State Court Lawsuit and Factual Allegations Related Thereto

In 2009, Delgado commenced an action in the Supreme Court of the State of New York, County of Nassau (the "2009 Action"). The complaint alleged that defendants there (including Laden) breached the Agreement. Delgado's second cause of action in the initial complaint in that lawsuit alleged that the defendants acted together to defraud Delgado of sports memorabilia signed or used by him. Specifically, Delgado alleged that defendants in the 2009 Action were involved in "looting" of sports memorabilia, failing to market memorabilia, refusing to pay the debts of Authentic Marketing, filing false and misleading tax returns and conversion of Authentic Marketing assets for their personal benefit. The actions of defendants were stated to have been intentional, malicious, wanton, and in violation of the laws and public policy of the State of New York.

In February of 2010, Delgado filed an amended complaint in the 2009 Action. While the amended complaint continued to name Lader as a Defendant, Lader was removed as a party alleged to be liable on causes of action alleging fraudulent conduct. Instead, the amended complaint names Lader as liable with respect to a single cause of action only. Now, Lader is accused only of failing to properly compensate Delgado for goods and services supplied, and to have been unjustly enriched as a result of such action.

## II. The Present Complaint

Plaintiffs' complaint here alleges the facts set forth above. Those facts focus on the allegations of fraudulent conduct attributed to Lader that were set forth by Delgado in the initial complaint in the 2009 Action. Specifically, Plaintiffs allege that "scurrilous" allegations of fraud were "available for viewing comment and discussion on the Internet" for a period of five months before the filing of the amended complaint. It is further asserted that Delgado's attorney (who is not named herein) was aware that Lader had done nothing wrong, and had no personal liability under the Agreement. The online availability of the allegations of the initial complaint in the 2009 Action is alleged to have resulted in "negative fallout" that had a devastating effect on Lader's reputation in the field of sports marketing. Additionally, Delago is asserted to have made the allegedly false assertions set forth in the 2009 Action "out of malice and for the purpose of interfering with plaintiffs' existing and prospective contracts in the field of sports memorabilia." Delgado is alleged to have thus tortiously interfered with Plaintiffs' existing and prospective contracts.

While Plaintiffs' complaint sets forth factual allegations, it states no particular causes of action arising therefrom. Instead, the allegations recited are asserted in successively numbered

4

paragraphs, without concluding that the facts support any particular claim for relief. Despite failing to allege any particular cause of action, Plaintiffs claim to have been damaged in an amount that exceeds $1 million.

III. The Motion To Dismiss

Defendant's motion interprets Plaintiffs as setting forth state law claims for defamation and tortious interference with existing and prospective business relationships. Dismissal of all such claims is sought. First, it is argued that any claim for defamation is time barred as having been commenced beyond the applicable one year statute of limitations. It is further argued that no defamation claim is stated in any event where, as here, the challenged statements are drawn directly from judicial proceedings. As to tortious interference, Defendant argues that Plaintiffs have failed to plausibly allege facts in support of any such claims – whether attempted to be stated for tortious interference with either existing or prospective contractual relations.

In response, Plaintiffs state that they make no claim for defamation. While their memorandum of law appears to argue that they have plausibly alleged a claim for tortious interference with business relationships, they also argue that their case is "unique," and that "unique cases do not always fit neatly within previously define areas of the law."

After setting forth applicable legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I. Legal Principles

A. Standards on a Motion To Dismiss

When considering a motion to dismiss under Rule 12(b)(6), allegations in the complaint

5

are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In meeting this standard, the complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

### B. Defamation: Legal Principles

Under New York law, establishing a claim for defamation requires a plaintiff to allege: (1) the making of a false defamatory statement of fact; (2) that the statement was published to a third party; (3) that the statement concerned the plaintiff; (4) that the defendant was responsible for making the statement; and (5) that the statement was per se defamatory, or caused special damages. Baez v. JetBlue Airways, 745 F. Supp.2d 214, 225 (E.D.N.Y. 2010); see Albert v. Loksen, 239 F.3d 256, 265–66 (2d Cir. 2001); D'Annunzio v. Ayken, Inc., 876 F. Supp.2d 211, 216 (E.D.N.Y. 2012). Defamation per se includes statements that "tend to injure another in his or her trade, business, or profession." Albert, 239 F.3d at 271. Statements made in the course of judicial proceedings are absolutely privileged and therefore may not form the basis of a claim for defamation. D'Annunzio, 876 F. Supp.2d at 216-17; Conte v. Newsday, Inc., 703 F. Supp.2d 126, 146 (E.D.N.Y. 2010). A claim for defamation is subject to a one year statue of limitations which statute accrues upon the first publication of the allegedly defamatory statement. Liverpool v. Con-Way, Inc., 2010 WL 4791697 *4 (E.D.N.Y. 2010); see N.Y. CPLR §215(3).

### C. Tortious Interference: Legal Principles

New York law provides for separate causes of action for interference with existing and

6

prospective contractual relationships. Each cause of action is governed by separate principles, as set forth below.

First, the elements of a claim for tortious interference with an existing contract are : (1) the existence of a valid contract between the aggrieved party and a third party; (2) the alleged tortfeasor's knowledge of the contract; (3) the alleged tortfeasor's improper intentional interference with its performance without justification; and (4) damages. Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001); Israel v. Wood Dolson Co., 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 5 (1956); Nelly de Vuyst, USA, Inc. v. Europe Cosmetiques, Inc., 2012 WL 246673 *6 (S.D.N.Y. 2012). Intentional interference is generally evidenced by a tortfeasor "inducing or otherwise causing a third person not to perform his contractual obligations to plaintiff." Enercomp v. McCorhill Pub, Inc., 873 F.2d 536, 541 (2d Cir. 1989) (citations omitted).

The elements of a cause of action for tortious interference with prospective economic advantage are: (1) existence of a profitable business relationship; (2) the tortfeasor's interference with that relationship; (3) the tortfeasor's use of dishonest, unfair, improper, or wrongful means; and (4) damage to the business relationship. Goldhirsh Group, Inc. v. Alpert, 107 F.3d 105, 108–09 (2d Cir.1997); Garrison v. Toshiba Business Solutions (USA), Inc., 2012 WL 6025745 *5 (E.D.N.Y. 2012); Five Star Dev. Resort Communities, LLC v. iStar RC Paradise Valley LLC, 2010 WL 2697137 *4 (S.D.N.Y.2010); Waste Services, Inc. v. Jamaica Ash and Rubbish Removal Co., 262 A.D.2d 401, 691 N.Y.S.2d 150 (2d Dep't.1990).

Importantly, a cause of action for interference with prospective (as opposed to existing) business relations, requires a plaintiff to show that the interference was accomplished by "wrongful means." Waste Services, 262 A.D.2d 401, 691 N.Y.S.2d 150, 151 (2d Dep't.1999)

(cause of action for tortious interference with prospective contractual relations requires showing of "malice or wrongful conduct"); Snyder v. Sony Music Entertainment, Inc., 252 A.D.2d 294, 684 N.Y.S.2d 235, 239 (1st Dept.1999). "Wrongful means" includes physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and economic pressure. Id.; see Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 191, 428 N.Y.S.2d 628, 633, 406 N.E.2d 445 (1980) (noting that with respect to prospective contracts "liability will be imposed only on proof of more culpable conduct on the part of the interferer"); Carvel Corp., 3 N.Y.3d at 190-91, 785 N.Y.S.2d at 359, 818 N.E.2d 1100 ( no liability for interference with prospective contract unless "a defendant's actions must amount to a crime or an independent tort, such as fraud or misrepresentation"). See Scutti Enterps. v. Park Place Entm't Corp., 322 F.3d 211, 216 (2d Cir. 2003).

## II. Disposition of the Motion

As noted, Plaintiffs' response to Defendant's motion takes the position that no claim is made for defamation. In response, Defendant argues that however Plaintiffs attempt to label their claim, where, as here, a plaintiff asserts damage to reputation arising out of an allegedly defamatory statement, the only claim stated is one for defamation. Since this action was commenced well after the expiration of the one year statute of limitations, it is argued to be time barred and should therefore be dismissed.

The court agrees that despite Plaintiffs' attempt to cast it differently, the complaint sets forth no more than a claim for defamation. Plaintiffs' complaint seeks compensation for damage to their business reputations as a result of statements made by Defendant in the initial complaint in the 2009 Action. Thus, the complaint refers specifically to allegedly false information stated in

that complaint. Referring to those statements, Plaintiffs state that the "fallout" from such false statements "had a devastating blow to Lader's business . . . ." Further, Plaintiffs refer to "the damages to their reputations wrought by the scurrilous accusations [of Defendant]." Such statements, however characterized (or, in this case not characterized, since no specific causes of action are alleged) state nothing more than a claim for defamation from statements made in the 2009 Action. As such, the claim is time-barred. Accord Gallagher v. Metro North Commuter R. Co., 846 F. Supp. 291, 293-94 (S.D.N.Y. 1994) (when characterizing claim courts look to "the reality and the essence of the action and not its mere name"), quoting, Ramsay v. Mary Imogene Bassett Hosp., 495 N.Y.S.2d 282, 284 (3d Dep't. 1985) (dismissing claims in tort on ground that plaintiff's claim was, in fact, a claim only for defamation).

Even if Plaintiffs' defamation claim was not time-barred, it would nonetheless be subject to dismissal because the allegedly defamatory statements were made in pleadings that relate to the subject matter of the 2009 Action, and are therefore absolutely privileged. Chord Associates, LLC v. Protech 2003-D, LLC, 2010 WL 3780380 *3 (E.D.N.Y. 2010).

To the extent that Plaintiffs' complaint can be somehow construed to state, in addition to a claim for defamation, a claim for tortious interference with existing or prospective business relationships, any such claims must also be dismissed. Plaintiffs complaint cannot be plausibly understood to make reference to any particular contract that was the subject of any interference. Thus, there is no claim stated for interference with an existing contractual relation. Any claim for interference with prospective business relationship also fails. Plaintiffs' complaint references only the statements made in pleadings and nowhere refers to any conduct that can be construed as rising to a level sufficient to state such a claim.

9

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the complaint is granted. The Clerk of the Court is directed to terminate the motion appearing at docket entry number 12 and to thereafter close the file in this case.

SO ORDERED

/s/ Leonard D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
March 29, 2013